MARK B. SEIGER (Bar No. ct05580)
mseiger@sgllawgroup.com
SHRINA B. FALDU (Bar No. ct29581)
sfaldu@sgllawgroup.com
SEIGER GFELLER LAURIE LLP
977 Farmington Ave., Suite 200
West Hartford, CT  06107
Telephone: 860-760-8415
Facsimile: 860-760-8401
(*Pro Hac Vice Application Pending*)

JAMES C. HYDE (CA SBN 88394)
chuck.hyde@rmkb.com
J. MARK THACKER (CA SBN 157182)
mark.thacker@rmkb.com
ROPERS, MAJESKI, KOHN & BENTLEY
50 West San Fernando Street, Suite 1400
San Jose, CA  95113-2429
Telephone: 408-287-6262
Facsimile: 408-918-4501

Attorneys for Plaintiffs
SAMUEL B. MILLER, a/k/a BODE MILLER, and
BOMBER, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL B. MILLER, a/k/a BODE MILLER, and BOMBER, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HEAD USA, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL** |

Plaintiff Samuel Miller, a/k/a Bode Miller ("Bode"), and plaintiff Bomber, LLC ("Bomber") (collectively the "Plaintiffs"), through their counsel, hereby bring this Complaint for Declaratory Judgment against Head USA, Inc. ("Defendant" or "Head"), and state and allege as follows:

## I.  PARTIES AND JURISDICTION

1. Plaintiff Bode Miller is an individual who at all times relevant was and is a resident of California residing in Coto de Caza (Orange County), California.

2. Plaintiff Bomber, LLC is a Delaware limited liability company. At all times relevant, its members have been and continue to be residents of the State of New York where its members all reside.

3. Defendant is incorporated under the laws of the State of Delaware and has its principle place of business in Boulder, Colorado, and does business in California.

4. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332, based on diversity of citizenship of the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

## II.  BACKGROUND

5. Bode is a professional ski racer who first made the U.S. Ski Team in 1998 and competed in the Nagano, Japan, Winter Olympics that same year.

6. At the 2001 Fédération Internationale de Ski (FIS) World Ski Championships in St. Anton, Austria, Bode sustained torn ligaments in his left knee following a crash while racing.

7. Bode rehabbed his knee and rebounded to earn a spot on the U.S. Ski Team in 2002 allowing him to compete in the 2002 Winter Olympics in Salt Lake City, Utah, where he earned silver medals in the giant slalom and the combined events.

8. In 2003, Bode was the first American to win two gold medals at a single World Championships, capturing both the giant slalom and combined titles, as well winning three U.S. national titles.

9. In 2004, Bode recorded six World Cup wins en-route to taking the giant slalom World Cup title.

10. Bode made history in 2005 being the only skier in the 39-year history

1  of the World Cup tour to win the first three races of a season. That same year, Bode
2  won two gold medals, downhill and super–G, at the World Championships, and
3  claimed the World Cup overall championship.

4      11.    Bode competed in five events at the 2006 Winter Olympics in Turin,
5  Italy, but failed to take home any medals.

6      12.    Shortly after the 2006 Winter Olympics, Bode announced that he was
7  leaving the U.S. Ski Team and was going to compete as an independent ski racer.

### A. HEAD

9      13.    On or about May 1, 2006, Bode entered into a sponsoring contract
10 with Head, which ran until April 30, 2008 (hereinafter the "2006 Sponsoring
11 Contract"). Pursuant to the terms of the 2006 Sponsoring Contract, Head provided
12 ski equipment for use by Bode while "…competing in skiing events, training,
13 skiing privately and for all other events connected in any way with the sporting
14 activity for which the specified equipment has been provided…." A copy of the
15 2006 Sponsoring Contract is attached hereto as **Exhibit 1**.

16     14.    Under date of August 1, 2007 Bode and Head entered into a document
17 entitled "Sponsoring Contract Amendment," stating "this Amendment shall serve to
18 amend the Endorsement Agreement between Head and Skier [Bode] dated May 1,
19 2006" (hereinafter the "August 2007 Amendment"). While the only prior agreement
20 between Bode and Head is the 2006 Sponsoring Contract, this amendment revises
21 the term of the contract as beginning on May 5, 2006, and ending on April 30,
22 2012. A copy of the August 2007 Amendment is attached hereto as **Exhibit 2**.

23     15.    Under date of April 17, 2012, Bode and Head entered into a document
24 entitled "Sponsoring Contract Amendment Nr. Two," which states "this
25 Amendment shall serve to amend the Endorsement Agreement between Head and
26 Skier [Bode] dated May 1, 2006" (hereinafter the "April 2012 Amendment"). This
27 amendment states that the contract begins May 1, 2012, and ends on April 30, 2016.
28 A copy of the April 2012 Amendment is attached hereto as **Exhibit 3**.

16. Under date of December 6, 2012, Bode and Head entered into a document entitled "Sponsoring Contract Amendment Nr. Three," stating "this Amendment shall serve to amend the Sponsoring Contract between Head and Skier [Bode] dated May 1, 2006" (hereinafter the "December 2012 Amendment"). This amendment states that the contract begins May 1, 2012 and ends on April 30, 2016. A copy of the December 2012 Amendment is attached hereto as **Exhibit 4**.

17. Due to knee surgery, Bode completely skipped the 2012/2013 racing season. He returned to racing in the 2013/2014 ski season finishing second in the Audi Birds of Prey giant slalom, and winning a bronze medal in the super-G in February 2014 at the Winter Olympics at Sochi, Russia.

18. Early in the 2014/2015 ski racing season, Bode decided to undergo surgery to relieve pain caused by a herniated disc in his lower back. His first race back following his back surgery was the World Championships in February 2015 at Vail/Beaver Creek, Colorado (this was his one and only race during the 2014/2015 ski racing season). During his super-G run, Bode hit a gate, causing a terrible fall which gashed his hamstring tendon, ending his race year.

19. Following his season-ending injury in February 2015, Bode decided to explore opportunities outside of ski racing where he could remain involved in the industry and utilize his talents to grow his income through business endeavors that did not require his racing.

20. A document entitled "Termination Agreement" "…made and entered into as of the ___ day of May 2015" was entered into between Head and Bode terminating the 2006 Sponsoring Contract, August 2007 Amendment, April 2012 Amendment and December 2012 Amendment (hereinafter the "Termination Agreement") (by the terms of the April 2012 Amendment, the 2006 Sponsorship Agreement automatically terminated when Bode announced to Head that he was not going to be competing in 2015/2016). A copy of the Termination Agreement is attached hereto as **Exhibit 5**. The Termination Agreement is a new agreement

between Bode and Head and is the subject of this litigation.

21. By entering into the Termination Agreement, Bode surrendered all future rights to any remuneration from Head.

22. The Termination Agreement contains a restrictive covenant reading: "…**Bode will not compete in World Cup or World Championship ski racing events for two full calendar years from the date of the Termination Agreement.**" *See* **Exhibit 5** (Emphasis added).

23. For a number of years before entering into the Termination Agreement and since the date on which the Termination Agreement was signed, Bode has lived in southern California, where he still lives with his wife and children.

24. Significant speculation surfaced after Bode's February 2015 injury at the World Championships at Vail/Beaver Creek as to whether he would retire from ski racing. Bode made his official announcement in October 2015 that at the age of 38, he would no longer be racing. As announced, Bode did not race in the 2015/2016 ski racing season.

## B. RELATIONSHIP WITH BOMBER

25. Bode became friends with Robert Siegel ("Siegel"), one of the principals of Bomber, after meeting at a charity event in 2014. Bode learned from Siegel that he and his partners had purchased Bomber with a vision of developing Bomber skis into a high-end luxury brand, manufacturing only skis of the highest quality. Through discussions with Siegel, Bode viewed Bomber as his opportunity to participate in the ski industry and to make skiing more enjoyable by participating in the design and production of superior quality skis.

26. Bode had long dreamed of sharing his passion for skiing with every skier, from the beginner to the expert, and saw Bomber as the vehicle through which he could achieve this goal. In part, as a result of his season ending injury at the World Championships, Bode decided to retire from ski racing to work with Bomber so as to foster his passion for the sport of skiing and help Bomber achieve

its goal.

27. Subsequent to the Termination Agreement, Bode began serving in the roles of brand ambassador and product development for Bomber.

28. Since retiring from professional racing and no longer being as visible in the public eye, Bode's ability to make money through endorsements has been greatly reduced. At the age of 39, Bode realized that his viability and marketability as a professional ski racer were rapidly dwindling, and that he needed to explore the possibility of coming out of retirement so that he could obtain quality endorsements to protect his family's financial future. Bode discussed his financial concerns with Siegel, and, in particular, the two discussed the possibility that Bode would return to racing in the 2016/2017 World Cup and World Championship season.

### III.   PRESENT DISPUTE

29. As word began to spread that Bode was considering returning to the World Cup racing circuit, Robert Siegel of Bomber received a letter from the General Counsel of Head Sports Group, Gefion Hauer, by way of email on August 11, 2016, a copy of which is attached hereto as **Exhibit 6**.

30. In her August 11, 2016 letter to Siegel, Dr. Hauer wrote:
> In 2015, Bode Miller wanted to retire in order to invest into and assist your company in developing skis. For this reason he had approached HEAD USA with the request to terminate HEAD's exclusive sponsoring contract prior to the end of its original term. In return for HEAD agreeing to this, Bode had confirmed in a Termination Agreement with HEAD signed in 2015 not to compete in World Cup or World Championship ski racing events (other than on HEAD skis) in 2016 and 2017. The reason for this was not to dilute HEAD's prior exclusive rights, and damage its reputation and image by Bode competing on Bomber

> skis.
>
> According to interviews given by Bode, however, he intends to do so.
>
> We have reminded Bode Miller about his legal obligations towards us and expect him to honour and respect the terms and provisions of the Termination Agreement.
>
> By this letter, we are placing Bomber on notice that HEAD will not tolerate any breach of its Termination Agreement and hereby insists that Bomber shall desist from any conduct which would interfere with HEAD's rights.
>
> If Bomber has taken or will be taking actions that interfere with HEAD's rights under the Termination Agreement, Head will undertake to enforce its rights to the fullest extent permitted by law including, but not limited to seeking injunctive relief and monetary damages against Bomber for tortious interference of contract.

See **Exhibit 6**.

31. On September 8, 2016, Craig Owen White of the law firm of Hahn Loeser in Cleveland, Ohio, sent a letter to Bode and Bomber's outside counsel stating in pertinent part:

> We are legal counsel to Head USA and its parent corporation (Head).
>
> Mr. Seiger's letter of August 24th questions the enforceability of Mr. Miller's promise under the Termination Agreement between he and Head not to compete in the World Cup or World Championship ski

> racing events for the two (2) full calendar years commencing May 7, 2015 (other than on Head skis). We have many years of experience in litigating these types of agreements and see no ambiguity in the provisions of the Termination Agreement or limitations to Head enforcing its rights thereunder.
>
> We underscore Dr. Hauer's warning that Head takes this matter seriously. [sic] Mr. Miller's public announcement that he intends to compete in the 2016/2017 World Cup on other than Head skis has already irreparably harmed Head and will cause Head to suffer millions of dollars in damage to its image and reputation
>
> Moreover, it appears that Mr. Miller's decision is being influenced by and for the commercial benefit of Bomber. To this end, Head regards, Bomber as tortuously interfering with its contractual relationship with Mr. Miller and will hold Bomber accountable and responsible for any damages incurred by Head.
>
> By this letter, Head hereby demands that Mr. Miller issue, by the close of business (New York time) on September 19, 2016, a public statement (and advise the USSA [United States Ski and Snowboard Association]) that he will not compete in the 2016/2017 World Cup and World Championship (other than on Head skis). If Mr. Miller fails to comply, Head will take such action as is necessary to protect its rights including seeking injunctive relief and filing suit against Mr. Miller and Bomber to recover damages, attorney's fees and costs.

A copy of Mr. White's September 8, 2016 letter is attached hereto as **Exhibit 7**.

32. While Dr. Hauer's August 11, 2016 and Mr. White's September 8, 2016, letters each gratuitously insert the phrases "(other than on Head skis)" into the restrictive covenant cited from the Termination Agreement, that phrase is nowhere to be found in the actual agreement. *See* **Exhibit 5**.

33. Bode has had an illustrious career as professional ski racer. At age 39, it is likely Bode's last real opportunity to competitively compete on the World Cup racing circuit and attract the lucrative endorsements needed to provide for his family.

34. Head's letter of August 11, 2016 and Mr. White's letter of September 8, 2016, each threaten to quash Bode's desire to achieve his last real chance to competitively participate in the 2016/2017 World Cup circuit and he World Championships.

35. Head has threatened lawsuits against Bode and Bomber wherein in it will seek injunctive relief, damages for injury to its reputation, damages against Bomber for tortious interference with contract, attorney's fees and costs. Further, according to Mr. White's letter of September 8, 2016, Bode's announcement that he intends to rejoin the World Cup circuit in the 2016/2017 ski season has already irreparably harmed Head and "will cause Head to suffer millions of dollars in damage to its image and reputation. *See* **Exhibit 7**.

## IV.  CLAIMS FOR RELIEF

### COUNT ONE

**(Declaratory Judgment invalidating Termination Agreement's restrictive covenant)**

36. Bode incorporates the allegations contained in paragraphs 1 through 35.

37. Head's August 11, 2016, letter attached as **Exhibit 6**, and Mr. White's

letter of September 8, 2016, attached as **Exhibit 7**, create an actual justiciable controversy between Bode Miller/Bomber and Head regarding Bode's ability to re-enter the 2016/2017 World Cup circuit and the World Championship.

38. The start of the World Cup circuit is scheduled for October 23, 2016, in Soelden, Austria.

39. California Business and Professions Code section 16600 specifically states:

> Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.

40. Bode Miller seeks declaratory judgment from this Court that the restrictive covenant Defendant contends precludes him from participating in the 2016/2017 World Cup circuit and the World Championships contained in the Termination Agreement is void as against public policy pursuant to California Business and Professional Code Section 16600 and that he can ski in those competitions using Bomber skis.

## COUNT TWO

**(Declaratory Judgment that Bomber did not tortuously interfere with any enforceable restrictive covenant between Head and Bode)**

41. Bomber incorporates the allegations contained in paragraphs 1 through 40.

42. Bomber seeks declaratory judgment from this Court that it did not tortuously interfere with any enforceable restrictive covenant between Bode and Head.

## PRAYER FOR RELIEF

Plaintiffs, and each of them, pray for judgment and relief as follows:

1. Enter judgment according to the declaratory relief sought;

2. Award Bode Miller and Bomber their costs and attorney's fees; and

3. Enter such further relief to which Bode Miller and Bomber may be entitled as a matter of law or equity, or which the court determines is just, fair, reasonable and proper.

Dated: September 12, 2016  ROPERS, MAJESKI, KOHN & BENTLEY

By: /s/ J. Mark Thacker
J. MARK THACKER
Attorneys for Plaintiffs
SAMUEL B. MILLER, a/k/a BODE MILLER, and BOMBER, LLC

### DEMAND FOR JURY TRIAL

Each Plaintiff requests a jury trial of all issues in this action so triable.

Dated: September 12, 2016  ROPERS, MAJESKI, KOHN & BENTLEY

By: /s/ J. Mark Thacker
J. MARK THACKER
Attorneys for Plaintiffs
SAMUEL B. MILLER, a/k/a BODE MILLER, and BOMBER, LLC